UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LATEASE GORDON, on behalf of herself and all others similarly situated, | ) ) ) | CASE NO. 1:21-cv-01956-CEF |
| | ) | JUDGE CHARLES ESQUE FLEMING |
| Plaintiff, | ) ) | |
| | ) | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| vs. | ) ) | |
| | ) | |
| OHIO SECURITY SYSTEMS, INC. d/b/a OSS INC., | ) ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |
| Defendant. | ) | |

**I.  Introduction**

Representative Plaintiff Latease Gordon, on behalf of herself and the current Opt-In Plaintiffs (collectively "Plaintiffs"), and Defendant Ohio Security Systems, Inc. d/b/a OSS Inc. ("Defendant") (collectively "the Parties") respectfully move this Honorable Court to approve the proposed Settlement reached by the Parties through mediation with Magistrate Judge Greenberg and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as corresponding state wage-and-hour statutes. Plaintiff asserted that Defendant violated the FLSA by failing to pay its hourly, non-exempt employees, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek. Specifically, Plaintiff alleged that Defendant violated the FLSA by not counting Plaintiffs' "pass down" or shift change work as time worked,

which included, but was not limited to, speaking with the security officer who worked the previous shift to obtain information about security issues that occurred during the previous shift, and security issues that could occur during the next shift.

If approved by the Court, the Settlement will provide for the issuance of Individual Payments in installments 30, 60, 90 and 120 calendar days after the approval.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and was reached during mediation with Magistrate Judge Jonathan D. Greenberg on January 18, 2023.

The settlement documents submitted for approval or entry by the Court consist of the following:

> Exhibit 1: Joint Stipulation of Settlement and Release
>
> Exhibit 2: Individual Settlement Agreement and Release
>
> Exhibit 3: Declaration of Alanna Klein Fischer
>
> Exhibit 4: Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the Settlement's principal terms, the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II. Factual and Procedural Background

### A. The Action

On October 14, 2021, Representative Plaintiff Latease Gordon filed this Action as a result of Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked over 40 each workweek, and for all hours worked in violation of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03. Specifically, Plaintiff alleged that Defendant violated the FLSA and the OMWFSA by not counting Plaintiffs' "pass down" or shift change work as time worked, which included, but was not limited to, speaking with the security officer who worked the previous shift to obtain information about security issues that occurred during the previous shift, and security issues that could occur during the next shift.

On January 6, 2022, the Parties filed a proposed stipulation to conditional class certification (ECF No. 10), which the Court approved the same day (ECF No. 11). The conditional class certification was for the following individuals:

> former and current security employees, including security officers, who were employed by Defendant at any time during the period beginning January 1, 2019 through the present.

Notice went out to 2,410 individuals. Upon the notice period's close, 265 Plaintiffs, including Plaintiff Gordon, had opted into the case. (ECF Nos. 3, 15, 17-20, 22-24.) Since then, one opt-in has withdrawn his consent. (ECF No. 33.)

The Parties engaged in extensive discovery: Defendant issued three sets of written discovery requests to Plaintiff, on February 16, 2022, August 26, 2022, and November 23, 2022. (Ex. 3 at ¶ 18.) Moreover, on May 19, 2022, Defendant deposed Plaintiff Gordon. (*Id.*) On June 3, 2022, Plaintiff issued written discovery requests to Defendant. (*Id.*) In response to Plaintiff's discovery requests, Defendant produced time and pay records for Plaintiffs who opted into the case, and provided information regarding the Plaintiffs' employment dates and wages. (*Id.*)

After Plaintiffs' counsel received the time and pay records, the Parties exchanged numerous emails and discussed the Parties' respective analyses of the data. (Ex. 3 at ¶ 19.)

On January 18, 2023, the Parties attended mediation before Magistrate Judge Greenberg.

The mediation was successful.

### B. Negotiation of the Settlement

Between February 2022 and January 2023 the Parties engaged in an extensive exchange of information which included the production of time and pay information relating to Plaintiff and the Opt-Ins, performing extensive calculations to determine the alleged damages of Plaintiffs, and holding numerous discussions regarding the calculation of damages and potential resolution. (Ex. 3 at ¶ 18-19.)

The Parties engaged in substantial investigation and both formal and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 24.) Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (*Id.*) This included interviewing and obtaining declarations from numerous putative class members. (*Id.*) Counsel for the Parties engaged in numerous and lengthy discussions regarding the damage calculations, Plaintiffs' claims and Defendant's defenses, and a successful mediation before Magistrate Judge Greenberg. (*Id.*)

The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (*Id.* at ¶ 24-25.) This included a complete analysis and calculation of Representative Plaintiff's and Opt-In Party Plaintiffs' overtime damages. (*Id.*)

The Parties engaged in extensive legal discussion, which included numerous and lengthy discussions between counsel for the Parties. (*Id.* at ¶ 19.)

In January 2023, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions, as well mediation with the assistance of Magistrate Judge Greenberg. (*Id.* at ¶ 18-21.)

Page **4** of **19**

On January 18, 2023, to reach a compromise and to avoid the expense and burden of litigation, the Parties reached an agreement to settle the lawsuit, on the terms set forth in the Settlement Agreement. (*Id.* at ¶ 21.)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the Opt-In Party Plaintiffs ("Plaintiffs"). Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Latease Gordon as the Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties. *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

The Settlement's Gross Amount is One Hundred Thousand Dollars ($100,000.00), which Defendant will pay as separate payments as follows: (1) Individual Payments to each Plaintiff for his or her complete overtime compensation owed; (2) Representative Plaintiff's service award; (3) Plaintiffs' Counsel's attorneys' fees; and (4) Plaintiffs' Counsel's expenses in the Action.

### 1. Individual Payments

Defendant will pay Thirty-Eight Thousand, Seven Hundred Fifteen Dollars and Ninety Cents ($38,715.90) to the Plaintiffs and divided into Individual Payments. The Individual

Payments are calculated proportionally on each Plaintiff's alleged overtime damages during the Calculation Period. Plaintiff's Counsel calculated the Individual Payments by adding between five and six minutes per shift worked each week, based on the assumptions that Plaintiffs worked (1) five shifts per week for each week of the Calculation Period; and (2) more than 40 hours per week for 60% of the weeks they worked during the Calculation Period. (Ex. 3 at ¶ 34.) Those additional overtime hours were multiplied by one and one-half times each Plaintiff's last hourly rate. Moreover, each Plaintiff will receive a minimum payment of $10, even if they had no damages. (*Id*.)

During the Calculation Period, based on the records provided by Defendant as analyzed by Plaintiffs' Counsel, Representative Plaintiff and the Opt-In Plaintiffs were allegedly denied $35,994.49 in overtime compensation for an extra five minutes of pre-shift work per day, and $44,393.36 in overtime compensation for an extra six minutes of pre-shift work per day. (*Id*.)

Thus, if approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation. The list of each Eligible Settlement Participant's Individual Payment will become Appendix 1 to the Agreement.

### 2. Service Award

Defendant will pay Three Thousand Dollars and No Cents ($3,000.00) to Plaintiff Latease Gordon, in addition to her Individual Payment, for her service as the Representative Plaintiff and for executing the release of claims, attached hereto as Exhibit 2.

### 3. Attorneys' Fees

Defendant will pay Fifty Thousand Dollars and No Cents ($50,000.00) to Class Counsel for attorneys' fees incurred to date and attorneys' fees that Class Counsel anticipates incurring following the filing of the Settlement.

4. **Attorneys' Expenses**

Defendant will pay Eight Thousand, Two Hundred Eighty-Four Dollars and Ten Cents ($8,284.10) to Class Counsel for expenses incurred prior to the Settlement in prosecuting these claims.

5. **Release of Claims**

In exchange, the Action will be dismissed, and the Plaintiffs will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and corresponding state wage and hour statues for the Release Period.

### III. The Approval's Propriety

The proposed Agreement is subject to the Court's approval pursuant to section 216(b) of the FLSA. As shown in the attached Declaration of Class Counsel Alanna Klein Fischer and as explained below, the Court's approval is warranted.

A. **The Seven-Factor Standard is Satisfied**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, *1 n. 1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the Crawford court

applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). As shown below and in the Declaration of Alanna Klein Fischer (*see* Exhibit 3), the standard supports the Settlement's approval.

### 1. No Indicia of Fraud or Collusion Exists

The Parties' respective counsel has extensive experience litigating claims under the FLSA. The Agreement was achieved after arms-length and good faith negotiations between the Parties, with a qualified and well-respected mediator's aid. As such, there is no indicia of fraud or collusion. Lest there be any doubt, Magistrate Greenberg can confirm the settlement came from hard-nosed, arms-length negotiations and without fraud or collusion.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Defendant claims that even if Plaintiff could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Parties would need to engage in extensive briefing regarding

collective class decertification and summary judgment. The Agreement, on the other hand, provides prompt, efficient, and substantial relief to Plaintiff and the Opt-in Plaintiffs, and amplifies the benefits of that relief through the economies of collective resolution.

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged including a complete analysis of each Plaintiff's alleged overtime damages with respect to the claims alleged in the lawsuit. (Ex. 3, ¶ 24.) Class Counsel obtained and reviewed detailed payroll records for the Plaintiffs, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.*) All aspects of the dispute are well-understood, and were vehemently argued, by both sides. (*Id.* at ¶ 27.)

### 4. The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiff's likelihood of success at trial. Plaintiff's claims are based on disputed issues of fact and law and Plaintiff's success at trial is far from guaranteed. In sum, although Plaintiffs assert that the Class claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both Parties believe in their clients' positions' merits, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including decertification, summary judgment, and trial.

Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. (Ex. 3, ¶ 28.) Moreover, even if

Plaintiffs were to succeed on the merits, the possibility exists that a jury could find that Defendant acted in good faith, and thus not award any liquidated damages. (*Id.*) Either scenario could result in a monetary award of less than the amount obtained through this settlement.

### 5. Counsel and Class Representative Favor the Agreement

Plaintiff's range of possible recovery is also disputable. Even if Plaintiff succeeds on her claims' merits, the recovery amount is uncertain and something upon which the Parties continue to disagree.

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Class Counsel believes the settlement is fair, reasonable, and adequate. (See Ex. 3, ¶ 40.) Class Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their clients in negotiating the settlement. (*See* Ex. 3.) Plaintiff has been fully informed and involved in the settlement process and agrees to the Agreement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### 6. Absent Class Members' Reaction

The absence of Class Members' objection indicates that the Class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, there are no objections by Class Members. However, unlike a Rule 23 Class Action settlement, each Class Member had the option of opting into this matter. The Plaintiffs have already consented to Latease Gordon as the Representative Plaintiff and to be bound by any

settlement and/or judgement in this case, so no fairness hearing is required or requested by the Parties.

### 7. Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The settlement ends complex litigation that has been pending for over a year and provides substantial relief to Eligible Settlement Participants and avoids protracted, costly litigation. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905-06 (S.D. Ohio 2001). The Settlement's terms are equitable and provide a reasonable resolution to the action. As detailed below, each Plaintiff will receive, at minimum, between five and six minutes per week, assuming that Plaintiffs worked (1) five shifts per week for each week of the Calculation Period; and (2) more than 40 hours per week for 60% of the weeks they worked during the Calculation Period. (Ex. 3 at ¶ 35.) Continued litigation would increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the Members of the Class. In fact, rulings by this Court or a verdict by a jury could result in less recovery for the Plaintiffs if this Court or a jury were to rule in Defendant's favor on disputed fact and law issues.

### B. The Settlement Distributions are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiffs.

As shown above, the seven-factor standard supports approval of the Settlement. The Parties' counsel has extensive experience litigating FLSA claims and there is no fraud or collusion.

(*See* Exhibit 3.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. (*Id*. at ¶ 41.) Formal discovery has concluded, the Parties have engaged in substantial investigation prior to and during the negotiations, and the issues are well understood by both sides. (*Id.* at ¶ 26.) The outcome is uncertain for the Plaintiffs, and the risks of continued litigation are evident for both sides. (*Id.* at ¶ 27.) The Parties' experienced attorneys support the Settlement, as does Plaintiff. (*See* Exhibit 3.) All Individual Payments will be calculated proportionally on each Eligible Settlement Participant's alleged overtime damages.

If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for alleged unpaid overtime compensation. However, continued litigation over these issues would be expensive, result in attorneys' fees and costs that would likely exceed the contested amount, and would be risky for Plaintiffs as a determination regarding those amounts would hinge on certain factual disputes that would need to be determined by a jury. (*Id*. at ¶ 28.) As such, the Parties reached a compromise considering the likely risks for both sides.

Pursuant to the Agreement, after considering attorneys' fees and costs and the service award, each Plaintiff will receive between five and six minutes per shift worked each week, based on the assumptions that Plaintiffs worked (1) five shifts per week for each week of the Calculation Period; and (2) more than 40 hours per week for 60% of the weeks they worked during the Calculation Period. Any additional overtime hours were multiplied by one and one-half times each Plaintiff's last hourly rate. Moreover, each Plaintiff will receive a minimum payment of $10, even if they had no damages from these calculations. (*Id*. at ¶ 35.)

During the Calculation Period, based on the records provided by Defendant as analyzed by Plaintiffs' Counsel, Representative Plaintiff and the Opt-In Plaintiffs were allegedly denied

$35,994.49 in overtime compensation for an extra five minutes of pre-shift work per day, and $44,393.36 in overtime compensation for an extra six minutes of pre-shift work per day.

Thus, if approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation. The list of each Eligible Settlement Participant's Individual Payment will become Appendix 1 to the Agreement.

### C. Class Counsel's Fees and Expenses are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The Sixth Circuit has underscored that "an award of attorney fees … encourage[s] the vindication of congressionally identified policies and rights," and thus "we have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (internal quotation omitted). *Fegley* upheld an award of $40,000.00 in fees even though the plaintiff recovered $7,680.00 in damages. *Id.* Courts outside the Sixth Circuit similarly do not unduly emphasize the plaintiff's recovery when assessing attorneys' fees. *See, e.g., Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir.1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Servs., Inc.*, No. CIV.A. 08-4703, 2010 WL 3282623, at *7 (E.D. Pa. Aug. 18, 2010) (awarding $73,195 in attorneys' fees, $2,871.78 in attorneys' costs in an FLSA action where plaintiffs recovered $18,495.68); *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010) (awarding $43,797 in attorneys' fees and $2,137.97 in damages); *Perrin v. John B. Webb & Assocs., Inc.*, No. 604CV399ORLKRS, 2005 WL 2465022, at *5 (M.D. Fla.

Oct. 6, 2005) (awarding $7,446 in attorneys' fees and $270 in damages, recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.*, No. CIV. A. 89-6522, 1992 WL 398381, at *6 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20).

Plaintiffs' Counsel's Declaration demonstrates the proposed fees' and expenses' fairness and reasonableness. (*See* Exhibit 3.)

Pursuant to the Settlement, Defendant will pay Plaintiffs' Counsel $50,000 in attorneys' fees. The total fees that Plaintiffs' counsel has incurred and expects to incur after filing the Settlement are greater than the fees the Settlement awards. *See* Exhibit 3 for further discussion on the fees' propriety and reasonableness.

Further pursuant to the Settlement, Defendant will pay Plaintiffs' Counsel $8,284.10 for expenses that Plaintiffs' Counsel has incurred to date in the litigation of this Action. (Ex. 3, ¶ 49.)

### D. The Service Award to Plaintiff Gordon is Fair and Reasonable

The Parties request approval of a service award to Plaintiff Latease Gordon for $3,000.00. "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *see also Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit"); *In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012) (substantially same).

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role

in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

(citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.,*

*Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, et al., 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *see also Dallas*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same). Here, Plaintiff Gordon satisfies all three factors.

First, Plaintiff Gordon has been involved in this action since the pre-suit investigation that gave rise to this action. (*See* Ex. 3, ¶ 15.) She participated in the pre-suit investigation, provided documents and information crucial to the evaluation of and pursuit of the claims, assisted in preparation for mediation, and participated in settlement negotiations. (*Id.*) These actions have resulted in substantial benefit to Plaintiffs, leading to a favorable settlement for them.

Second, Plaintiff Gordon undertook substantial direct and indirect risk. She agreed to bring the action in her name and agreed to testify at deposition and trial. (*Id.* ¶ 14.) In doing so, she assumed the risk of retaliation and blacklisting. *Id.*; *see Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *9 (D. Conn. July 31, 2014) (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving

an additional payment, lest others be dissuaded."); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 CIV. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). *See also Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 CIV. 7670 BSJJCF, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment.")

Even though Plaintiff Gordon was not employed by Defendant when she initiated the lawsuit, she risked her ability to secure future employment. *See Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Third, Plaintiff Gordon spent significant time and effort pursuing this litigation on behalf of the Plaintiffs. This included the time and effort she expended in pre-litigation assistance to Plaintiff's Counsel in investigating the claims brought, the time and effort spent in assisting with the complaint's preparation, and mediation preparation. (Ex. 3, ¶ 15.) Moreover, she was deposed and responded to three sets of Defendant's written discovery requests. (*Id*. at ¶18.)

Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment class and collective actions. In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards. *See Pieber v. SVS Vision, INC.*, No. CV 20-13051, 2022 WL 687248, at *1 (E.D. Mich. Mar. 8, 2022) (approving service awards of $6,000 and $3,000 to representative plaintiffs); *Al-Sabur v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving service award of $12,500 for the representative plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) ($10,000 service award for each named plaintiff); *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

**IV. Conclusion**

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 4.

Respectfully submitted,

| | |
|---|---|
| */s/ Barry Y. Freeman* | */s/ Alanna Klein Fischer* |
| Barry Y. Freeman (0062040) | Alanna Klein Fischer (0090986) |
| Danielle C. Young (0100894) | Anthony J. Lazzaro (0077962) |
| Roetzel & Andress, LPA | Lori M. Griffin (0085241) |
| 1375 E. 9th Street, 10th Floor | Matthew S. Grimsley (0092942) |
| Cleveland, OH 44114 | The Lazzaro Law Firm, LLC |
| Phone: 216-615-4850 | The Heritage Bldg., Suite 250 |

| | |
|---|---|
| Facsimile: 216-623-0134<br>bfreeman@ralaw.com<br>dyoung@ralaw.com<br><br>Defendant's Attorneys | 34555 Chagrin Boulevard<br>Moreland Hills, OH 44022<br>Phone: 216-696-5000<br>Facsimile: 216-696-7005<br>alanna@lazzarolawfirm.com<br>anthony@lazzarolawfirm.com<br>lori@lazzarolawfirm.com<br>matthew@lazzarolawfirm.com<br><br>Plaintiff's Attorneys |

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, a copy of the foregoing was sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

                */s/ Alanna Klein Fischer*
                One of the Attorneys for Plaintiff